GILCHRIST, APPELLEE, *v*. GONSOR; UNITED STATES FIDELITY & GUARANTY

COMPANY ET AL., APPELLANTS.

[Cite as *Gilchrist v. Gonsor*, 104 Ohio St.3d 599, 2004-Ohio-7103.]

*Insurance – Motor vehicles – Former R.C. 3937.18 – Uninsured- and underinsured-motorist insurance — "Fronting" policies – Former R.C. 3937.18 applies to fronting policies.*

(Nos. 2003-1081 and 2003-1092 — Submitted May 25, 2004 — Decided December 30, 2004.)

APPEAL from and CERTIFIED by the Court of Appeals for Cuyahoga County, No. 80944, 2003-Ohio-2297.

_____

SYLLABUS OF THE COURT

The uninsured- and underinsured-motorist provisions of former R.C. 3937.18 apply to fronting policies.

_____

PFEIFER, J.

{¶ 1} The issue in this case is whether insurance policies with a deductible that matches the limit of liability, known as fronting policies, are subject to the provisions of former R.C. 3937.18. We hold that they are subject to those provisions and affirm the judgment of the court of appeals.

{¶ 2} On August 19, 2000, Michael Gilchrist was injured when struck by a vehicle driven by Arthur Gonsor. At the time he was injured, Gilchrist was in the course and scope of his employment with United Rentals, Inc. ("URI"). Gilchrist filed a claim against United States Fidelity & Guaranty Company ("USF & G"), URI's insurer, for underinsured-motorist coverage. An endorsement to the declarations page of the relevant USF & G policy states that the policy covers

"[a]utos for which certification of financial responsibility is required in states where [URI] is not qualified for self-insurance." The trial court granted summary judgment in favor of Gilchrist, finding that URI was not self-insured and that certification of financial responsibility is required in Ohio. The court of appeals upheld the trial court's grant of summary judgment.

{¶ 3} The cause is now before the court upon the acceptance of a discretionary appeal and upon our determination that a conflict exists.

{¶ 4} A term of the agreement between URI and USF & G states that liability and uninsured- and underinsured-motorist ("UM") coverage is provided in states where certification of financial responsibility is required and where URI is not qualified for self-insurance. Certification of financial responsibility is required in Ohio. R.C. 4509.101(A). We must now determine whether URI was self-insured in Ohio.

{¶ 5} URI and USF & G entered into an agreement, which is titled and referred to throughout as a commercial insurance policy. The policy includes a section titled "Business Auto Coverage." Thus, URI was insured by USF & G.

{¶ 6} USF & G contends that, even though URI purchased an automobile insurance policy, URI was self-insured in the practical sense because the deductible amount of the policy and the liability limits of the policy are the same, $1,000,000. In support, USF & G cites *Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47, 49, 21 OBR 331, 487 N.E.2d 310. In *Grange*, we considered "whether an employer, who meets Ohio's financial responsibility laws other than by purchasing a contract of insurance, must comply with the requirements * * * contained in R.C. 3937.18 * * *." Id. at 48, 21 OBR 331, 487 N.E.2d 310. The employer in *Grange* had complied with state financial-responsibility requirements by purchasing a financial-responsibility bond and excess insurance coverage. We stated that this particular form of coverage did not make the employer self-insured "in the legal sense contemplated

by R.C. 4509.45(D) [now (A)(5)] and 4509.72." Id., 21 Ohio St.3d at 49, 21 OBR 331, 487 N.E.2d 310. We held, however, that the employer was self-insured "in the practical sense in that [the employer] was ultimately responsible under the terms of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim." Id.

{¶ 7} *Grange* is inapplicable in this case because URI did not meet Ohio's financial responsibility law "other than by purchasing a contract of liability insurance." URI purchased an insurance policy. In contrast, the employer in *Grange* purchased a financial responsibility bond, which qualifies as proof of financial responsibility under R.C. 4509.45(A)(3). Nothing in the record indicates that URI took any measures, other than purchasing the fronting policy from USF & G, to establish proof of financial responsibility. Under R.C. 4509.45(A)(1) through (5), an employer may prove financial responsibility by means of a financial-responsibility identification card, a certificate of insurance, a bond, a certificate of deposit of money or securities, or a certificate of self-insurance. The fact that there is no evidence that URI obtained a certificate of self-insurance pursuant to R.C. 4509.45(A)(5) is of particular importance because only those with "sufficient financial ability to pay judgments against [them]" are able to obtain such a certificate. R.C. 4509.72(B). Allowing fronting policies to substitute for certificates of self-insurance would subvert the "sufficient financial ability" requirement of R.C. 4509.72(B). We conclude that URI was not self-insured in the practical sense within the meaning of *Grange*.

{¶ 8} The version of R.C. 3937.18 applicable to this case is determined by the date the policy was issued. *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 250, 725 N.E.2d 261. The relevant policy in this case was issued on January 1, 2000. The version of R.C. 3937.18(A) effective on that date provided that "[n]o automobile liability or motor vehicle liability policy * * * shall be delivered or issued for delivery in this state * * * unless both [uninsured and underinsured]

coverages are offered to persons insured under the policy * * *." 148 Ohio Laws, Part IV, 8577.

{¶ 9} URI met its statutory duty to provide proof of financial responsibility by purchasing a contract of insurance. Accordingly, USF & G, its insurer, is subject to the provisions of former R.C. 3937.18. The language of former R.C. 3937.18(A) was unambiguous. It mandated that "[n]o automobile liability or motor vehicle liability policy * * * shall be delivered or issued for delivery in this state * * * unless [UM coverage is] offered to persons under the policy * * *." 148 Ohio Laws, Part IV, 8577.

{¶ 10} We hold that the uninsured- and underinsured-motorist coverage provisions of former R.C. 3937.18 apply to fronting policies and affirm the judgment of the court of appeals.

Judgment affirmed.

RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., concurs separately.

LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., dissent.

_____

**MOYER, C.J., concurring.**

{¶ 11} I agree with the majority's analysis and conclusion that the UM/UIM coverage provisions of former R.C. 3937.18 apply to the insurance policy in this case.[1] Owners and operators of motor vehicles in Ohio must maintain and file proof of financial responsibility. R.C. 4509.101(A)(1); R.C. 4509.45. As the majority states, R.C. 4509.45(A)(1) through (5) provides that such proof may be shown by means of a financial responsibility identification card, a certificate of insurance, a bond, a certificate of deposit of money or securities, or a certificate of self-insurance. URI determined that compliance other

---

1. In 2001, the General Assembly repealed the mandatory-offering component of R.C. 3937.18. 2001 Am.Sub.S.B. No. 97. This decision therefore has limited application.

than by the purchase of insurance was either not feasible or too costly. USF & G in fact expressed in its brief that "a pure self-insurance program was fraught with administrative and legal complications and significant costs." Thus, in an effort to minimize costs, URI chose to purchase from USF & G an insurance policy that approximated self-insurance. Regardless of the ultimate distribution of risk, URI was able to comply with state law by filing a certificate of insurance. URI and USF & G seek to describe their contract as insurance for one purpose and as something else for another purpose. They now assert that the contract is not a contract for the provision of insurance coverage. It is not consistent to argue that the contract is an insurance policy for purposes of complying with Ohio's financial responsibility requirement and that the same policy is not one of insurance in order to avoid the mandatory UM/UIM offering under former R.C. 3937.18.

{¶ 12} Moreover, the policy provides that "[b]ankruptcy or insolvency of [URI] * * * will not relieve [USF & G] of any obligations under this Coverage Form." USF & G contends that the Automobile Self-Funded Retention Endorsement[2] negates this provision so that URI retains 100 percent of the risk of loss. Although the policy does not explicitly state that the fronting provisions have no effect on USF & G's obligation to pay claims in the event that URI files for bankruptcy or becomes insolvent, we are guided by the longstanding rule that ambiguities in insurance policies are to be construed strictly against the insurer. *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949, syllabus.[3] After resolving any uncertainty against USF & G, it is

---

2 This is the endorsement that contains the fronting provisions.

3. At oral argument counsel for USF & G initially said that USF & G "would have to step in and do that [cover the loss in the event of URI's insolvency or bankruptcy]." However, counsel later stated that he did not want to concede that USF & G would be liable, although he did acknowledge that it was a legitimate issue.

clear that USF & G exposed itself to at least some risk. The fact that USF & G carried some risk of loss further verifies that the arrangement in this case was an insurance policy and is therefore subject to the previous decisions of this court that create liability for UM/UIM coverage pursuant to former R.C. 3937.18.

{¶ 13} For the foregoing reasons, I concur in the decision of the majority.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 14} I respectfully dissent. Because United Rentals, Inc. ("URI") bore the ultimate responsibility for the risk of loss, I believe that its "fronting policy" was self-insurance in the practical sense. Therefore, we should apply the rationale of *Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310, and reverse the judgment of the court of appeals.

{¶ 15} The majority concludes in a two-sentence analysis: "URI and USF & G entered into an agreement, which is titled and referred to throughout as a commercial insurance policy. * * * Thus, URI was insured by USF & G." But a closer look at the agreement and the relationship between the parties discloses an unconventional business arrangement that is atypical of the usual insurer-insured relationship.

{¶ 16} URI is an international corporation that owns more than 500,000 rental items, including numerous motor vehicles, which it must adequately insure from loss. Based in part on the size of its business and the enormous cost of insurance, URI selected a "fronting policy" as a means of risk management. The term "fronting" is an insurance term indicating that an entity is renting an insurance company's licensing and filing capabilities. *McCollum v. Continental Ins. Co.* (Apr. 9, 1993), Lucas App. No. L-92-141, 1993 WL 382455, *3.

{¶ 17} Large businesses that operate in multiple states and/or countries commonly use an arrangement called a "fronting policy" or "fronting program" in

6

which the business pays a greatly discounted premium to an insurance company with insurance licensing and filing capabilities in particular states. In exchange, the company receives an insurance policy that complies with the financial-responsibility laws of each state in which the business is required to maintain proof of financial responsibility. See Mark W. Flory & Angela Lui Walsh, Know Thy Self-Insurance (and Thy Primary and Excess Insurance) (2001), 36 Tort & Ins.L.J. 1005, 1006-1007. The business bears all the risk because it has a deductible that matches the policy's limits while merely using the insurer's licensing and filing capabilities. Here, URI had $1 million of coverage, but agreed to be responsible for all claims. The insurer would never have to pay a claim. This approach is beneficial and cost-effective for a large company such as URI because it permits the company, for all practical purposes, to self-insure losses up to the amount of the deductible without having to meet the formal legal requirements for qualifying as a self-insurer in jurisdictions where it does business. Therefore, a fronting policy differs from the traditional insurance policy.

{¶ 18} We have held that the uninsured-motorist provisions of R.C. 3937.18 do not apply to self-insurers. *Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp.*, 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310, syllabus. This principle should be applied to a fronting policy. However, the majority distinguishes *Grange* because in that case, Refiners Transport & Terminal Corp. had purchased a financial-responsibility bond as proof of its financial responsibility under R.C. 4509.45(A)(3), whereas URI had an insurance policy. But as the dissenting judge below stated, "[t]hat is a distinction without meaning." I agree. Both are merely tools that prove financial responsibility. Both are forms of "self-insurance" in that the company, not the surety or the insurance company, is responsible for payment of any loss.

**{¶ 19}** The majority ignores the fact that the court's analysis of self-insurance in *Grange* focused on who bore the ultimate responsibility for the risk of loss. The court concluded that, whether a bond principal or a self-insurer, for purposes of the uninsured- and underinsured-motorists provisions of R.C. 3937.18, Refiners was *self-insured "in the practical sense" because it was "ultimately responsible" for payment* of claims. (Emphasis added.) Id., 21 Ohio St.3d at 49, 21 OBR 331, 487 N.E.2d 310.

**{¶ 20}** Technically, USF & G issued an insurance policy to URI that satisfied URI's proof of financial responsibility under R.C. 4509.45(A). USF & G appeared to be the insurer, yet under the terms of the agreement, USF & G bore no obligation to defend or settle claims and no risk of loss. For all practical purposes, URI was the primary insurer ultimately responsible to a claimant. Consequently, it logically follows that, with no transfer of risk from an insured to an insurer, there is no need for an offer of, or a decision to accept or reject, UM/UIM coverage. As we said in *Grange*, if R.C. 3937.18 applied to self-insurers, "it would result in the absurd 'situation where one has the right to reject an offer of insurance to one's self * * *.' " Id. at 49, 21 OBR 331, 487 N.E.2d 310, quoting the court below.

**{¶ 21}** A fronting policy as the functional equivalent of self-insurance is not a novel concept. In *Chicago Ins. Co. v. Travelers Ins. Co.* (Ky.App. 1997), 967 S.W.2d 35, the court described a Travelers policy issued to Walgreen Company as essentially a "fronting policy" by which Walgreen was self-insured because the policy had matching $1 million deductible and coverage limits. In *Air Liquide Am. Corp. v. Continental Cas. Co.* (C.A.10, 2000), 217 F.3d 1272, 1274, the court concluded that a CIGNA policy issued to Air Liquide was not a typical liability policy because the company's deductible matched the policy limits. Air Liquide was responsible for its own losses. In *Playtex FP, Inc. v. Columbia Cas. Co.* (Del.Super.1991), 609 A.2d 1087, 1091, the court

acknowledged that the company used a fronting agreement to accomplish self-insurance.  See, also, *Tribune Co. v. Allstate Ins. Co.* (1999), 306 Ill.App.3d 779, 782, 239 Ill.Dec. 818, 715 N.E.2d 263.

**{¶ 22}** The majority's analysis focuses on the agreement's label.  But the substance of the agreement between URI and USF & G indicates that it was merely a fronting policy that is a form of self-insurance in the practical sense, with URI ultimately responsible for payment of claims.  Consequently, the uninsured- and underinsured-motorist provisions of former R.C. 3937.18 do not apply.

**{¶ 23}** I dissent and would reverse the judgment of the court of appeals.

O'CONNOR and O'DONNELL, JJ., concur in the foregoing dissenting opinion.

_____

Lowe, Eklund, Wakefield & Mulvihill Co., L.P.A., and Mark L. Wakefield, for appellee.

Davis & Young, Thomas W. Wright, Richard M. Garner and Patrick M. Roche, for appellants United States Fidelity & Guaranty Company and St. Paul Fire & Marine Insurance Company.

Janik & Dorman, Steven G. Janik and Matthew J. Grimm, urging reversal for amicus curiae Member Companies of the American International Group, Inc.

Connelly, Jackson & Collier, L.L.P., and Anthony E. Turley, urging affirmance for amicus curiae Ohio Academy of Trial Lawyers.

_____