**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 19 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

AIR LIQUIDE AMERICA
CORPORATION, a Delaware
corporation,

     Plaintiff-Appellee,

v.

CONTINENTAL CASUALTY
COMPANY, an Illinois corporation;
STAFFING RESOURCES OF
OKLAHOMA, an Oklahoma
corporation,

     Defendants-Third-Party
     Plaintiffs-Appellants,

v.

CIGNA PROPERTY AND
CASUALTY INSURANCE
COMPANY, a Connecticut
corporation,

     Third-Party Defendant-
     Appellee,

  and

SAMUEL CANADA,

     Third-Party Defendant.

No. 99-5022

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 97-CV-315-H)**

Edward J. Main (James K. Secrest, II with him on the briefs), Tulsa, Oklahoma, for Appellants.

Paula E. Litt, Schopf & Weiss, Chicago, Illinois (Paula W. Render, Schopf & Weiss, and W. Kirk Turner, Newton, O'Connor, Turner & Auer, Tulsa, Oklahoma, with her on the briefs) for Appellee Air Liquide.

John R. Woodard, III and Paula J. Quillin of Feldman, Franden, Woodard & Farris, Tulsa, Oklahoma, filed a brief for Appellee Third-Party Defendant Cigna Property & Casualty Insurance Company.

Before **EBEL,** Circuit Judge, **McWILLIAMS,** Senior Circuit Judge, and **BRISCOE**, Circuit Judge.

**EBEL**, Circuit Judge.

This is an appeal from the district court's grant of summary judgment in a dispute between two businesses and their insurance companies. The dispute turns on which of two insurance policies provides primary coverage for a vehicular accident. Defendants/Third Party Plaintiffs-Appellants Continental Casualty Company ("Continental") and Staffing Resources of Oklahoma, Inc. ("Staffing Resources") (collectively, "Appellants") contend the district court erred in granting summary judgment to Plaintiff-Appellee Air Liquide America

- 2 -

Corporation ("Air Liquide") and Third Party Defendants-Appellees CIGNA Property and Casualty Company ("CIGNA") and Mr. Samuel Canada ("Canada") (collectively, "Appellees"). The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM in part and REVERSE in part.

## BACKGROUND

Air Liquide manufactures and distributes industrial gases, operating a distribution facility in Pryor, Oklahoma. Air Liquide employed Canada as a truck driver for the Pryor depot until December of 1991, when Canada retired. Air Liquide indicated to Canada its desire to employ him in a temporary capacity in the summer of 1992, but Air Liquide learned that rehiring Canada would prevent him from collecting various retirement benefits. As a result, Air Liquide referred Canada to the employment agency of Blazer Services (the predecessor in interest to Staffing Resources) in the summer of 1992. Blazer Services, and then Staffing Resources,[1] arranged to provide Canada to Air Liquide in exchange for a 42.5% surcharge on Canada's wages. This arrangement continued each summer from 1992 to 1996.

---

[1] Staffing Resources acquired Blazer Services in 1995. Hereinafter, Staffing Resources and Blazer Services are referred to interchangeably.

On August 1, 1996, Canada was involved in a vehicular accident while driving an Air Liquide delivery truck, causing serious injuries to various individuals. The injured parties alleged Canada's negligence caused the accident and they sought damages both from Staffing Resources and Air Liquide as well as from Canada in separate proceedings.

Staffing Resources is insured by Continental; Air Liquide is insured by CIGNA. The CIGNA policy issued to Air Liquide, however, is not a typical liability insurance policy. Rather, it establishes that Air Liquide's deductible under the policy ($1M) is exactly equal to the policy's limits ($1M). Thus, it is actually a form of self-insurance, under which Air Liquide is responsible for its own losses and CIGNA acts merely as a surety that Air Liquide will be able to pay any judgment covered under the policy. Such arrangements are known as "fronting" policies. See Rory A. Goode, Note, Self-Insurance as Insurance in Liability Policy "Other Insurance" Provisions, 56 Wash. & Lee L. Rev. 1245, 1257 (1999).

Air Liquide filed a declaratory judgment action against Continental and Staffing Resources in the United States District Court for the Northern District of Oklahoma, seeking a determination that Continental's policy (with Staffing Resources) provided for a defense and primary indemnification of the underlying claims to Air Liquide . Continental and Staffing Resources then named CIGNA

and Canada as third party defendants, seeking a declaration that CIGNA's policy provided a defense and primary indemnification. Air Liquide, Continental, and Staffing Resources all filed cross-motions for summary judgment. The district court concluded that Canada and Air Liquide were insureds under the Continental policy, that Air Liquide's self-insurance policy did not constitute "other collectible insurance," and that therefore the Continental policy offered primary coverage. The district court further held that Continental owed Air Liquide a defense. Continental and Staffing Resources now appeal from this judgment.

## DISCUSSION

"A federal court sitting in diversity applies the substantive law . . . of the forum state." Barrett v Tallon, 30 F.3d 1296, 1300 (10th Cir. 1994). Accordingly, we look to Oklahoma law for guidance on the interpretation of these insurance policies.[2]

---

[2] We are aware of Oklahoma's choice of law rule providing that, where there are

> motor vehicle insurance cases involving conflicting state laws . . . [t]he validity, interpretation, application and effect of the provisions of a motor vehicle insurance contract should be determined in accordance with the laws of the state in which the contract was made, unless those provisions are contrary to the public policy of Oklahoma, or unless the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter and the parties.

Bohannon v. Allstate Ins. Co., 820 P.2d 787, 797 (Okla. 1991). In its brief, Air Liquide asserts (without directing us to supporting evidence in the record) that its

(continued...)

[2](...continued)
policy with CIGNA was "negotiated, placed and executed in Texas" and thus Texas law should apply on the duty to defend issue. (AL Aple. Br. at 46.)

However, throughout the proceedings below, both the parties and the district court have argued and applied Oklahoma law in interpreting these insurance contracts. In its brief to this court, Air Liquide suggests that it preserved the right to challenge on appeal choice of law issues on matters not presented to the district court. (See AL Aple. Br. at 46 n.7) We doubt, however, whether any such reservation can be accomplished by a lone footnote in Air Liquide's response to defendants' motion for summary judgment, which reads: "The law applicable to the CNA [Continental] Auto Policy may be Texas law, because Staffing Resources and its insurance broker are located in Texas. However, like Oklahoma law, Texas law requires that insurance contracts be construed broadly in favor of coverage." (Aplt. App. 1458.) If anything, this footnote appears to amount to a concession that Air Liquide discerns no meaningful difference between Oklahoma and Texas law on this issue.

Even assuming that we would allow Air Liquide to raise this choice of law issue on appeal, it has attempted to do so only with respect to the issue of a duty to defend. (See AL Aple. Br. at 46-47.) With respect to the interpretation of the word "employee" and Continental's alleged duty to indemnify Air Liquide under the policy held by Staffing Resources, Air Liquide has consistently argued Oklahoma law both at the district court and on appeal. (See Aplt. App. at 1457, 1458, 1461, 1464, 1465, 1466, 1467, 1471 [Air Liquide's opposition to defendants' motion for summary judgment]; AL Aple. Br. at 19, 21, 22, 23, 26, 28.) Thus, with the possible exception of the duty to defend issue, we apply Oklahoma law to the present case. See Strickland Tower Maint., Inc. v. AT&T Comm., Inc., 128 F.3d 1422, 1426 (10th Cir. 1997) ("The district court applied Oklahoma law to this case and neither party challenges that finding on appeal. Therefore, we accept the view of the district court that Oklahoma law applies."); Dr. Pepper Co. v. Adams Inv. Co., No. 90-6078, 1991 WL 148876, at *1 (10th Cir. Aug. 5, 1991) (unpublished) ("[Although a]rguments can be made that Texas law does not apply to the awarding of attorney fees . . . [the appellant] . . . made a deliberate choice to rely on Texas law, and cannot now say that the district court erred in holding [the appellant] to that choice."); cf. Southern Star Foods Inc. v. Northfield Freezing Sys., Inc., 202 B.R. 784, 788 (Bankr. E.D. Okla. 1996)

(continued...)

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the [opposing] party.

Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999) (internal citations omitted).

---

[2](...continued)
(effecting a waiver of an agreement's choice of law provision where "both parties present the issues in terms of Oklahoma law").

With respect to the duty to defend issue, it is not necessary for us to determine whether Air Liquide's attempt to resurrect the choice of law issue on appeal is successful. We would reach the same conclusion under either Texas or Oklahoma law, both of which require that the clear language of the policy can negate a duty to defend. Compare National Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997) ("An insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy.") with 15 O.S.A. § 427 (establishing that the duty to defend accompanies a duty to indemnify "unless a contrary intention appears" from the policy). Although there may be instances in which Texas and Oklahoma law might reach conflicting results, the present case does not compel such a divergence.

**I. Coverage**

This issue presents two primary questions: (1) whether Canada was an insured under Staffing Resources' policy with Continental;[3] and (2) assuming question (1) is answered in the affirmative, whether the Continental policy was excess to Air Liquide's policy with CIGNA.[4]

**A. Is Canada an Insured Under the Continental Policy?**

The Continental policy with Staffing Resources provides that "[a]ny employee of yours is an 'insured' while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs." Thus, Canada was an insured under the policy if all three of the following conditions obtain: (1) He was an employee of Staffing Resources at the time of the accident; (2) he was using a "covered 'auto'" not owned, hired, or borrowed by Staffing Resources; and (3) he

---

[3] It is not disputed that if Canada is an insured under the Continental policy, then Air Liquide is also an insured under that policy because it is "liable for the conduct of an 'insured.'"

[4] It is not disputed that Canada is an insured under the CIGNA policy, which classifies as insureds "[a]nyone . . . using with your [Air Liquide's] permission a covered 'auto' you own, hire, or borrow." Canada was driving a truck owned by Air Liquide with the company's permission when the accident occurred, and thus he is plainly an insured under the CIGNA policy. Likewise, once we determine, see infra, that Canada was an employee of Staffing Resources and that the accident arose in the course of that employment, it is clear that Staffing Resources is also an insured under the CIGNA policy, which purports to cover "[a]nyone liable for the conduct of an 'insured.'"

was engaged in the business or personal affairs of Staffing Resources when the accident occurred. Appellants do not dispute that the second factor is satisfied. We answer the remaining questions in the affirmative.

**1. Canada's Employee Status**

Unfortunately, the Continental policy does not define the term "employee." As the parties' arguments on this point demonstrate, this "policy term . . . is reasonably susceptible to more than one meaning" as applied to the circumstances of the present case. Max True Plastering v. United States Fidelity & Guaranty Co., 912 P.2d 861, 869 (Okla. 1996). Accordingly, we conclude that the term, as used in the Continental policy and applied to these facts, is ambiguous as a matter of law. See id. Max True Plastering requires that we construe ambiguous terms in insurance contracts to conform "with the parties' reasonable expectations." Id. at 868-69. Based on our review of the Continental policy and the circumstances surrounding Canada's relationship with Staffing Resources and Air Liquide, and applying the reasonable expectations test, we conclude that Canada was an employee of Staffing Resources for insurance purposes.

First, the language of the Continental policy makes no attempt to exclude from coverage certain types of employees, depending on whether Staffing Resources performed the full range of employer functions or merely performed payroll services. Rather, it purports to include any employee. Second, and quite

significantly, Staffing Resources' conduct indicates that it believed it would be responsible for the actions of individuals it dispatched to drive vehicles for other companies. To this end, Staffing Resources' internal Drivers Policy contained the following statement:

> When we supply drivers to a client we expose ourselves to automobile liability claims unless we take steps to avoid the exposure. In the event of an accident we could be sued by: any person who was injured or had property damaged, . . . or the client's insurance companies to recover their loss from us.
>
> If the client's own employee was driving, these actions would not be available. All of the loss would be borne by the client or their insurance companies. Our objective is to return to that position. Failure to follow proper procedures will result in claims being paid under our auto insurance which increases our premium company-wide.

The procedures set forth included requiring the client to sign a hold-harmless agreement and requesting that the client name Staffing Resources as an insured on the client's insurance policy. In the present case, these procedures were not followed. Although Staffing Resources' interpretation of its potential exposure to liability is not necessarily binding on Continental, it is relevant under the reasonable expectations doctrine as to whom Staffing Resources thought the policy covered. This statement by Staffing Resources indicates its belief that drivers it supplied to a client could give rise to liability on the part of Staffing Resources and accordingly that such drivers would be covered employees under the Continental policy.

- 10 -

Third, the dealings between Staffing Resources and Air Liquide further indicate that Canada was a Staffing Resources employee. The weekly time sheets Air Liquide submitted described Canada as a Staffing Resources employee, and Canada was himself required to sign employment applications in 1992 and 1994, which stated "I understand that my Employer is Blazer Services and not the company where I may be assigned to work." In addition, Staffing Resources never indicated to Air Liquide that the circumstances of Canada's hiring altered his status, and Staffing Resources held out Canada as its employee for federal and state governmental purposes. Moreover, Staffing Resources provided Air Liquide a Certificate of Insurance representing that Staffing Resources had the Continental policy. Although the certificate explicitly declares that it is issued as a matter of information only and confers no rights upon the certificate holder, nor does it alter or amend the policies disclosed in the certificate, in light of the surrounding circumstances it likely confirmed Air Liquide's impression that Canada was Staffing Resources' employee and covered by Staffing Resources' insurance policy.

Appellants rely primarily on the day-to-day control Air Liquide exercised over Canada. Staffing Resources notes that Air Liquide told Canada when to work, supervised his job performance, and that Staffing Resources only received notice how much Canada worked for Air Liquide during a particular week after

the fact. However, by the very nature of its business, an employment agency has an atypical employment relationship with the individuals it sends to its clients. Staffing Resources (and Canada) declared time and again that Canada was Staffing Resources' employee. On this record, it is clear as a matter of law that Canada was an employee of Staffing Resources within the meaning of the Continental policy.

**2. In the Business of Staffing Resources**

It is similarly clear that Canada was performing the business of Staffing Resources when the accident occurred. Staffing Resources paid Canada to drive a truck for its client, Air Liquide, and the accident took place while Canada was performing these duties. Staffing Resources was in the business of providing employees to its clients, and, as its Drivers Policy indicates, Staffing Resources understood that its potential liability extended to incidents that might occur while its driver was assigned to a client. Canada was therefore acting in the business of Staffing Resources when the accident occurred.

Thus, Canada was a Staffing Resources employee driving a covered auto in the business of Staffing Resources. Accordingly, we hold that Canada and Air Liquide are insureds under the Continental policy.

**B. Is the Continental Policy Excess to the CIGNA Policy?**

Because Canada and Air Liquide (as well as Staffing Resources) are insureds under the Continental policy, and because Canada and Staffing Resources (as well as Air Liquide) are insureds under the CIGNA policy, it is necessary to examine the policies to determine whether each purports to provide primary or excess insurance for the accident. By its terms, the CIGNA policy provides primary insurance for this incident: "For any covered 'auto' you own, this Coverage form provides primary insurance." It is undisputed that Air Liquide owned the truck Canada was driving at the time of the accident. Thus, the CIGNA policy purports to be primary.

The Continental policy provides: "For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance." The issue thus presented is whether the CIGNA policy constitutes "other collectible insurance." Resolving this matter requires us to consider the significance, if any, of the fact that Air Liquide's policy with CIGNA is a form of self-insurance.

Although Oklahoma apparently has not decided whether self-insurance is "other collectible insurance," we believe our decision in Industrial Indemnity Co. v. Continental Casualty Co., 375 F.2d 183 (10th Cir. 1967), is controlling on this

issue.[5] Industrial Indemnity concerned an incident arising out of two subcontractors' work on an Oklahoma oil lease. The first subcontractor, Halliburton Oil Well Cementing Company ("Halliburton"), was insured by Continental Casualty Company ("Continental Casualty"); the second, Johnson Construction Company ("Johnson"), was insured by Industrial Indemnity Company ("Industrial"). See id. at 184. While en route to the job site, a Halliburton employee was injured when attempting to disconnect a Halliburton truck from a Johnson tractor that had towed the truck through the mud. See id. The Halliburton employee sued Johnson, and Johnson claimed that, in addition to being an insured under its policy with Industrial, it was an insured under Halliburton's policy with Continental Casualty. The court agreed that Johnson was also an insured under the Continental Casualty policy, and then addressed the question of how to allocate the loss between the two policies.

It is apparent from the court's reasoning that both policies contained substantially identical "other insurance" clauses purporting to render that policy excess if there was other insurance.[6] See id. at 185. It is further apparent that

_____

[5] Industrial Indemnity required us to apply and predict Oklahoma state law. See id. at 185.

[6] We note that the terms "other insurance" and "other collectible insurance" are, for present purposes, substantially identical. See Self-Insurance Against Liability as Other Insurance Within Meaning of Liability Insurance Policy, 46 A.L.R.4th 707, 709 (1986) (noting that "[c]ourts do not generally distinguish

(continued...)

- 14 -

Halliburton's policy with Continental Casualty provided that Halliburton would reimburse Continental Casualty for any losses. See id. Continental Casualty argued to this court that "Halliburton was a self-insuror by reason of its agreement to reimburse the insurance carrier for the losses and hence there was no 'other insurance.'" Id. We rejected this argument and affirmed the district court's proration of the loss between the policies, stating that "[t]here is no authority in Oklahoma which would dictate that a distinction should be made between the nature of the coverage." Id. at 186. Thus, we held that the fact that one policy was, in effect, self-insurance did not diminish the applicability of an "other insurance" clause.

We follow the reasoning of Industrial Indemnity in the present case and conclude that Air Liquide's self-insurance is "other collectible insurance" within the meaning of the Continental policy. We have found no authority in Oklahoma contradicting our decision in Industrial Indemnity, and we remain of the opinion that it reaches the correct result. Air Liquide's decision to self-insure does not relieve it from primary liability simply because the underlying accident was also covered by another insurance policy. Were we to hold otherwise, Air Liquide would receive the double windfall of avoiding significant premium payments

6(...continued)
among these phrases.").

- 15 -

under a standard insurance policy and avoiding primary liability for an accident caused by one of its vehicles. We predict that Oklahoma would not reach such an inequitable result.[7]

Thus, we conclude that Air Liquide's CIGNA policy is "other collectible insurance" within the meaning of the Continental policy, notwithstanding Air Liquide's obligation to fully reimburse CIGNA for any losses.[8] As a result, the

---

[7] Appellees' citation of <u>Beech Aircraft Corp. v. United States</u>, 797 F.2d 920 (10th Cir. 1986), is misguided. <u>Beech Aircraft</u> held that self-insurance was not insurance withing the meaning of a tax code provision allowing for deductibility of insurance premiums. <u>See id.</u> at 922. Thus, the issue addressed in <u>Beech Aircraft</u> is plainly distinguishable from the case at bar.

We also note that at least two of the cases from other jurisdictions relied upon by the district court are plainly distinguishable from the present case. <u>See St. John's Reg'l Health Ctr. v. American Cas. Co.</u>, 980 F.2d 1222, 1225 (8th Cir. 1992) (addressing a pooled liability fund); <u>Physician's Ins. Co. of Ohio v. Grandview Hosp. & Med. Ctr.</u>, 542 N.E.2d 706 (Ohio App. 1988) (addressing a hospital's contractual obligation to indemnify an employee). Neither of these cases involved a fronting policy like the CIGNA policy in the present case, in which a company that is in the business of insuring against loss acts as a surety for the self-insured's ability to satisfy a judgment. We also note that other jurisdictions have followed the approach of <u>Industrial Indemnity</u> and the case at bar. <u>See</u> Self-Insurance Against Liability as Other Insurance Within Meaning of Liability Insurance Policy, 46 A.L.R.4th 707 (1986) § 3[a], 4[a] (collecting cases); 1 Couch on Insurance 3d § 10:6 (same). In any event, the cases relied upon by the district court are from other jurisdictions and, hence, are not controlling, whereas <u>Industrial Indemnity</u> represents controlling Tenth Circuit authority interpreting Oklahoma law.

[8] <u>Cf.</u> 15 Couch on Insurance 3d § 217:9 ("Any applicable deductible is relevant between the insurer and the insured only, and does not apply to proration.")

terms of the Continental policy make it excess to the CIGNA policy.[9]  Thus, we

reverse the district court's holding that the Continental policy was primary.

**II. Duty to Defend**

It remains for us to determine which policy or party has the responsibility

for defending the insureds in the legal actions filed by the victims in connection

with Canada's accident.  Appellants contend that CIGNA owes Staffing

Resources a defense and that, if CIGNA does not fulfill this obligation, then

under the CIGNA policy the duty devolves onto Air Liquide.  Air Liquide, in turn,

argues that it and Canada are owed a defense under the Continental policy.

A. CIGNA

As we read its Deductible Endorsement, the CIGNA policy expressly

disclaims any duty to defend.  The relevant provision reads:

> You have entered into an agreement with the claim service
> organization shown in the Schedule (the "Claim Service
> Organization"), whereunder the Claim Service Organization shall
> provide investigation, administration, adjustment, and settlement
> services, and shall provide for the defense of all claims or "suits"
> arising under this policy.  Accordingly, you agree with us that we

---

[9] In light of our conclusion the Continental policy is excess, we need not address Appellants' arguments that the "MCS-90" endorsement attached to the CIGNA policy automatically renders it primary.

We do note, however, that the attachment of the MCS-90 endorsement supports our characterization of the CIGNA policy as "other collectible insurance," in that, vis-à-vis the public, the endorsement renders the policy more like a standard risk-shifting insurance policy.

- 17 -

shall not have any duty to defend any such "suit," or to pay with respect to any claim or "suit" any ALAE [Allocated Loss Adjustment Expense].

The "Claim Service Organization" is identified as "Ward THG,"[10] which appears to be an entity separate from CIGNA. Thus, the endorsement indicates that Air Liquide has arranged with a third party to provide adjustment and defense services and that CIGNA is relieved of any duty to defend. Accordingly, CIGNA has no duty to defend any insured, including Staffing Resources, under the policy.[11]

B. Air Liquide

The CIGNA policy expressly disclaims any duty to defend, and there is no indication in the policy that Air Liquide owes a defense to Staffing Resources. The Deductible Endorsement reveals that Air Liquide has contracted with a third party to provide adjustment and defense services, but that in no way obligates Air Liquide to provide a defense to additional insureds. Simply put, the CIGNA

---

[10] Ward THG is actually identified as the "Claims Handling Organization" in the schedule which is a part of the same page of the endorsement, but it is clear that Ward THG is the designated Claim Service Organization.

[11] We are not persuaded by Appellants' argument that the Endorsement's use of the word "accordingly" indicates that the duty to defend devolves upon CIGNA if Air Liquide refuses to defend an additional insured. Such a reading is not supported by the unambiguous and plain meaning of the language relieving CIGNA of "any duty to defend."

policy eliminates a duty to defend, and Appellants' attempts to locate any such duty within the policy are misguided.

C. Continental

The Continental policy provides that "We [Continental] have the right and duty to defend any 'insured' against a 'suit' asking for such damages." As we have previously explained, both Canada and Air Liquide are insureds under the Continental policy. Although the Continental policy disclaims the duty to defend a suit "to which this insurance does not apply," the Continental policy does apply to this incident–it is merely excess in indemnification coverage to the CIGNA policy. We therefore conclude that, by the plain terms of its policy with Staffing Resources, Continental is obligated to defend Canada and Air Liquide.

**CONCLUSION**

Although we agree with the district court's conclusion that Canada was an employee of Staffing Resources and therefore was an insured along with Air Liquide under the Continental policy, we find that the CIGNA policy is "other collectible insurance" as contemplated by the Continental policy. As a result, for purposes of liability indemnification, the Continental policy is, by its terms, excess to the CIGNA policy, and the CIGNA policy is primary. The district court's judgment to the contrary is therefore REVERSED. However, as the Continental policy imposes a duty on the insurer to defend all insureds, and the

CIGNA policy contains no duty to defend, the district court's judgment imposing a duty upon Continental to defend Canada and Air Liquide is AFFIRMED. This matter is REMANDED to the district court for such further proceedings as may be appropriate.