**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 2, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

KAREN CHRISTOFFERSEN; BART CHRISTOFFERSEN; KC CHRISTOFFERSEN; JESSIE ANNE CHRISTOFFERSEN; PHYLLIS CHRISTOFFERSEN; THE ESTATE OF ALAN CHRISTOFFERSEN, deceased,

Plaintiffs-Appellees/
Appellants/Cross-Appellants,

v.

UNITED PARCEL SERVICE, INC.,

Defendant-Appellee,

and

LIBERTY MUTUAL INSURANCE GROUP,

Defendant-Appellant/Cross-Appellee.

Nos. 13-4007 & 13-4013

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:11-CV-00259-BSJ)**

David R. Olsen (Paul M. Simmons and Charles T. Conrad, on the briefs) of Dewsnup, King & Olsen, Salt Lake City, Utah, for Plaintiffs-Appellees/ Appellants/Cross-Appellants.

John R. Lund (Melinda K. Bowen, on the briefs) of Snow, Christensen & Martineau, Salt Lake City, Utah, for Defendant-Appellee United Parcel Service, Inc.

Matthew L. Lalli (Adam C. Buck and Jessica E. Yates, on the briefs) of Snell & Wilmer L.L.P., Salt Lake City, Utah, for Defendant-Appellant/Cross-Appellee Liberty Mutual Insurance Group.

---

Before **GORSUCH**, **MATHESON**, and **BACHARACH**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

Mr. Alan Christoffersen drove a truck for United Parcel Service (UPS) until he was struck and killed by an underinsured motorist. After the accident, Mr. Christoffersen's heirs sued UPS and its automobile insurer (Liberty Mutual Insurance Group), asserting claims for underinsured motorist (UIM) benefits. All parties moved for summary judgment. The district court granted UPS's motion on the ground that Utah's Worker's Compensation Act provided the exclusive remedy. On the claim against Liberty Mutual, the court granted judgment to the heirs for $10,000. Through this judgment, the court effectively awarded partial summary judgment to both sides, holding that: (1) UPS did not validly reject UIM coverage under its 2008 policy, (2) the policy was a "new" policy for purposes of determining UIM coverage, and (3) the heirs were entitled to recover UIM benefits in the amount of $10,000. The heirs and Liberty Mutual appealed.

2

We conclude that Liberty Mutual did not incur liability because UPS validly rejected UIM coverage; thus, on the claim against Liberty Mutual, we reverse the judgment of $10,000 for the heirs and remand with instructions to grant summary judgment to Liberty Mutual on the entire claim. And we affirm the award of summary judgment to UPS because it was not considered a "self insurer" for purposes of Utah's UIM statute.

## I. Background

The parties' appellate arguments require an understanding of Utah's UIM statute, the terms of UPS's automobile insurance policy, and the heirs' claim for UIM coverage.

### A. Utah's UIM Statute

Utah's UIM statute ordinarily provides for mandatory UIM coverage of at least $10,000 for one person and $20,000 for two or more persons in a single accident. *See* Utah Code Ann. § 31A-22-305.3(2)(d) (2007 supp.). An exception exists if a named insured rejects UIM coverage by complying with subsection (g) of the statute. Under subsection (g), a named insured must reject UIM coverage "by an express writing to the insurer . . . on a form provided by the insurer that includes a reasonable explanation of the purpose of [UIM] coverage and when it would be applicable." *Id.* § 31A-22-305.3(2)(g). A rejection remains effective for subsequent renewals of the policy unless the insured makes a written request for UIM coverage. *Id.*

3

The statute also establishes rules regarding UIM coverage and requires insurance companies to make certain disclosures about UIM coverage to their insureds. These rules and disclosure requirements vary depending on whether a policy was "new" or "existing" on January 1, 2001.

Subsection (b) of the statute governs new policies. This subsection creates a presumption of UIM coverage in all new policies unless it has been validly rejected under subsection (g). The presumptive amount of coverage is the lesser of: (1) the policy's liability limits, or (2) the maximum UIM coverage available under the policy. *Id.* § 31A-22-305.3(2)(b). A named insured can waive the presumptive amount (and purchase less UIM coverage) by signing an acknowledgment form that meets certain requirements. *Id.*

Subsection (h) of the statute governs existing policies. Although UIM coverage is not presumptively included in existing policies, subsection (h) requires insurers to disclose information to insureds that have some UIM coverage, but in an amount less than the liability limits or the maximum available under the policy. *Id.* § 31A-22-305.3(2)(h).

**B.  UPS's Automobile Insurance Policy with Liberty Mutual**

UPS has long obtained automobile insurance policies from Liberty Mutual. Since 2001, these policies have had deductibles equal to the policy limits. This arrangement leaves much of the risk with UPS, but creates risk for Liberty Mutual by requiring it to pay claims if UPS is unable to do so.

With each policy renewal, UPS decides whether to purchase UIM coverage on a state-by-state basis. Under this arrangement, UPS has chosen to reject UIM coverage in every state where permitted by state law. Utah was one of these states.

In Utah, Liberty Mutual submitted a form to its policyholders that stated:

> A new Utah law requires that we provide you with an additional insurance coverage. It is called Underinsured Motorist coverage (hereafter, UIM). This coverage gives you additional insurance benefits if you or others in your automobile are injured in an automobile accident caused by another party who is primarily at fault, but that party does not have enough insurance to compensate you for your injuries. UIM coverage is not the same as the Uninsured Motorist (UM) coverage you may currently have on your policy.
>
> The law states that we must provide you with UIM coverage in minimum amounts of $10,000 for one person in any one accident and $20,000 for two or more persons in any one accident. The form providing the coverage has been added to your policy. Please read this form. The premium charge for this coverage has been included in the total premium amount for your policy renewal. Please refer to your Renewal Notice for the actual premium charge.
>
> The law also allows you to reject UIM coverage if you do not want it. Any rejection of coverage must be done in writing. The rejection will last as long as we are your insurer or until you send us a written request to add the coverage.

Appellant's App. vol. 3, at 686-92.

The accompanying form presented UPS with two options: (1) purchase UIM coverage of at least $10,000 for one person and $20,000 for two or more persons in any one accident, or (2) reject all UIM coverage. UPS took the second option, signing a form (each year) that expressly rejected all UIM coverage in Utah.

5

### C. Mr. Christoffersen's Accident and the Resulting Litigation

The possibility of UIM coverage became significant in 2008 when Mr. Christoffersen was struck and killed by an underinsured motorist. Mr. Christoffersen's heirs lack adequate insurance protection because: (1) they recovered less than $1 million, and (2) their tort claim is valued at roughly $2.8 million. Unable to fully recover from the tortfeasor, Mr. Christoffersen's heirs sued UPS and Liberty Mutual, claiming UIM benefits under the Utah statute.[1]

All parties moved for summary judgment. In connection with these motions, UPS argued that it was not a self-insurer and that Utah's Worker's Compensation Act provided the exclusive remedy. Liberty Mutual argued that the policy did not include UIM coverage because it had been rejected by UPS. The heirs asked the court to declare that they were entitled to UIM coverage from one or both of the defendants.

## II. Standing

The defendants argue that the heirs lack standing to assert their claims, reasoning that they are not parties to the insurance contract and cannot "reform" the terms in a manner contrary to the contracting parties' intent. These arguments are rejected.

Standing has elements that are constitutional and prudential. *N. Laramie Range Alliance v. Fed. Energy Regulatory Comm'n*, 733 F.3d 1030, 1033 (10th Cir. 2013). The

---

[1] The heirs also claimed breach of contract and bad faith. But the appeal involves only the statutory claims for UIM benefits.

6

defendants do not distinguish between the two, but seem to base their argument on the Constitution.

Constitutional standing contains three elements: injury-in-fact, causation, and redressability. *See WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1181 (10th Cir. 2012). Liberty Mutual points to the "injury-in-fact" requirement, while UPS does not identify the missing element. Appellant's Principal Br. at 26-27 (May 6, 2013) (Liberty Mutual's argument that the heirs lack an injury-in-fact); Br. of Appellee UPS at 32-37 (Aug. 7, 2013) (UPS's argument that the heirs lack standing to reform the insurance contract). However the standing argument is framed, it would remain invalid.

Liberty Mutual relies on the absence of an injury-in-fact. But the evidence suggested inadequate liability insurance to satisfy the heirs' tort claim. Without adequate liability insurance, the fact-finder could infer an injury-in-fact from the heirs' inability to collect UIM coverage from Liberty Mutual.

UPS's argument is also invalid. Like Liberty Mutual, UPS argues that the insurance contract does not contain UIM coverage. From this argument, UPS goes further and contends that non-parties (like Mr. Christoffersen's heirs) cannot seek reformation unless they are considered "third-party beneficiaries." But this argument confuses the merits of the claims with the heirs' standing.

The heirs are not seeking to reform the contract. Instead, the heirs base their claim on the Utah statutes, arguing that UIM coverage exists—not because the parties thought it was included in the contract—but because coverage arose by operation of law.

To prevail on this claim, the plaintiffs must show a statutory entitlement to UIM coverage. But entitlement to benefits and standing are separate inquiries. *See Stacey v. Saunders*, 437 So. 2d 1230, 1233 n.3 (Ala. 1983) (discussing the distinction between the plaintiffs' potential standing as third-party beneficiaries and their entitlement to benefits). Even if the plaintiffs were to fall short in establishing an entitlement to benefits, they would have satisfied the three conventional elements of standing: injury-in-fact, causation, and redressability. Thus, we reject the defendants' standing challenge.

## III.   Standard of Review

We engage in de novo review over the summary judgment rulings. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1311 (10th Cir. 2009). Summary judgment would have been appropriate only if the evidence reflected the absence of a genuine issue of material fact. *Id.* at 1312. In applying this test, we view the evidence in the light most favorable to the party opposing summary judgment. *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994).

## IV.   Claim Against Liberty Mutual

Liberty Mutual challenges the district court's award of partial summary judgment to the heirs, contending that they were not entitled to any UIM coverage. According to

Liberty Mutual, the policy did not include UIM coverage because: (1) it was validly rejected under subsection (g), or (2) the policy was "existing" on January 1, 2001, and subsection (h) was satisfied. We conclude that UIM coverage was rejected in compliance with subsection (g), and this rejection would have sufficed regardless of whether the policy were considered "new" or "existing."

A.    **Subsection (g)**

Subsection (g) allows a named insured to reject UIM coverage by "express writing . . . on a form provided by the insurer that includes a reasonable explanation of the purpose of [UIM] coverage and when it would be applicable." Utah Code Ann. § 31A-22-305.3(2)(g) (2007 supp.). The heirs argue that: (1) subsection (g) does not apply, and (2) UPS's purported rejection was ineffective because Liberty Mutual's form failed to reasonably explain the purpose of UIM coverage and when it applies. We reject both arguments.

The threshold issue is whether subsection (g) applies, for the heirs argue that subsection (g) applies only to "existing" policies and that the policy is "new." For the sake of argument, we can assume that the policy is new. But there is nothing in subsection (g) that suggests its application is limited to existing policies. Thus, even if the policy were new, subsection (g) would apply. *See Am. Nat'l Prop. & Cas. Co. v. Checketts*, No. 2:11-CV-250-BSJ, 2012 WL 1835866, at *5 (D. Utah May 21, 2012) (explaining that "[c]ustomers purchasing new policies [can] still reject UIM coverage

9

altogether" under subsection (g)), *rev'd on other grounds*, 528 F. App'x 851 (10th Cir. 2013).

Under subsection (g), we must decide whether the form reasonably explained the purpose of UIM coverage and when it applied. The extent of the required explanation was addressed in *Lopez v. United Automobile Insurance Co.*, 274 P.3d 897 (Utah 2012). There, the court concluded that insurers must "provide sufficient information to allow consumers to make informed decisions regarding the selection of UIM coverage." *Id.* at 901. Applying this standard, the court held that the insurer's explanation was insufficient because it: (1) used the term "underinsured" without defining its meaning, (2) used the term "uninsured/underinsured" without differentiating between the two types of coverage, and (3) "lump[ed] the benefits of UIM coverage and uninsured motorist coverage together, making it difficult to understand when the respective benefits of each coverage apply." *Id.* at 903.

Under *Lopez*, Liberty Mutual's disclosure form provided sufficient information to allow a consumer to make an informed decision about UIM coverage. The form reasonably explained that the purpose of UIM coverage was to provide "additional insurance benefits" to insureds or their passengers injured in a car accident caused by someone without enough liability insurance. Appellant's App. vol. 3, at 686-92.

The form does not contain any of the three deficiencies identified in *Lopez*.

10

First, the form did not fail to define the word "underinsured." Rather, the form identified an "underinsured" motorist as someone who "does not have enough insurance to compensate [the insured or his passenger] for [his] injuries." *Id.*

Second, the form differentiated between UM and UIM coverage, explaining that "UIM coverage is not the same as the Uninsured Motorist (UM) coverage [the policyholder] may currently have." *Id.*

Third, the form did not lump together the benefits of UIM coverage and UM coverage, "making it difficult to understand when the respective benefits of each coverage apply." *Lopez v. United Auto. Ins. Co.*, 274 P.3d 897, 903 (Utah 2012). Indeed, the form's sole reference to UM benefits served to clarify that they were distinct from UIM benefits.

The heirs raise three complaints regarding Liberty Mutual's disclosure form: (1) it referred to the wrong statute, citing Section 31A-22-305 rather than Section 31A-22-305.3; (2) it referred to "additional insurance benefits" without identifying them or stating when they would apply; and (3) it did not provide the insured with an option to purchase UIM coverage up to the policy's liability limits or the maximum UIM coverage available under the policy. These complaints do not undermine the validity of the form in light of subsection (g)'s minimal statutory requirements.

11

First, the alleged error in the citation[2] is immaterial because subsection (g) does not require citation of the statute. *See* Utah Code Ann. § 31A-22-305.3(2)(g) (2007 supp.). Instead, subsection (g) requires only that the form reasonably explain the purpose of UIM coverage and when it applies. *Id.* These requirements would not be implicated by the error in the statutory citation.

In arriving at this conclusion, we do not rule out the possibility that a mistake in the citation could make the disclosure so confusing that it failed to reasonably explain the purpose of UIM coverage or when it applied. Though this possibility could exist in the abstract, it does not apply here. The error is an obvious typographical error, with ".3" omitted at the end of the citation. The cited section pertains to coverage for those that are uninsured, not underinsured. Notwithstanding the typographical error, the content of Liberty Mutual's explanation was accurate. Though the wrong section was cited, the heirs do not state how the error would confuse readers on the required elements: an explanation of the purpose of UIM coverage and when it applies. Thus, the typographical error does not create a factual dispute on a material issue.

Second, the form's reference to "additional insurance benefits" does not invalidate the disclosure. The disclosure begins with the phrase "additional insurance benefits," but goes on to explain precisely what these benefits are, telling the reader that the "additional

---

[2]     The heirs did not make this argument in their summary-judgment briefs. *See* Appellant's App. vol. 3, at 582-87. But the heirs' attorney presented this claim in oral argument. *Id*. vol. 4, at 912; *id.* vol. 5, at 1121.

12

insurance benefits" are paid "if [he or she] or someone in [his or her] automobile suffers bodily injury, sickness, disease, or death because of an automobile accident caused by another party who is primarily at fault, but who does not have enough insurance to compensate for the injuries." Appellant's App. vol. 2, at 477-86. Any reasonable fact-finder would conclude that this statement tells the reader the purpose of UIM coverage and when it applies.

The heirs liken the term "additional insurance benefits" to the phrase "certain benefits," which appeared on the form struck down in *Lopez*. The reliance on *Lopez* is misplaced. There, the relevant portion of the form stated that "Uninsured/Underinsured Motorists . . . Coverage provide[d] for payment of certain benefits for damages caused by the owner or operator of uninsured/underinsured motor vehicles." *Lopez v. United Auto. Ins. Co.*, 274 P.3d 897, 903 (Utah 2012). But the problem in *Lopez* was not the vagueness of the term "certain benefits." Instead, the problem was the lumping together of UIM coverage and UM coverage. By failing to distinguish between the two, the *Lopez* court found "it difficult to understand when the respective benefits of each coverage apply." *Id.* Because Liberty Mutual's form does not lump UIM and UM benefits together, the problem discussed in *Lopez* is absent.

Third, we reject the heirs' complaint that the form failed to give UPS the option of buying greater UIM coverage. Under subsection (g), no such disclosure is required.

13

Instead, this subsection requires only that the form reasonably explain the purpose of UIM coverage and when it applies.

In sum, Liberty Mutual's disclosure form provided sufficient information to allow a policyholder to make an informed decision about UIM coverage. Thus, the form satisfied *Lopez*'s "reasonable explanation" standard and UPS validly rejected UIM coverage. With this rejection, UPS obtained a policy without UIM coverage; as a result, the heirs' claim against Liberty Mutual fails as a matter of law.

## B. Subsection (b)

The heirs argue that even if the disclosure sufficed under subsection (g), we would need to determine whether the disclosure satisfied subsection (b). This argument is rejected.

To assess the logic of the heirs' reading, we must consider the respective functions of subsections (g) and (b). Subsection (g) addresses the validity of an insured's decision to decline all UIM coverage; subsection (b) establishes a presumptive amount of UIM coverage and addresses an insured's decision to buy some, but not all, of that amount.

We have concluded that UPS validly rejected all UIM coverage. But the heirs argue that even if UPS rejected all UIM coverage, we must decide if UPS had enough information to decline the presumptive amount of UIM coverage for "new" policies. This reading would create an absurdity. An insured could knowingly reject all UIM coverage, but nonetheless be duped into buying the presumptive amount for "new"

14

policies.  As a result, a subsection (g) rejection would be valid only if the insurer's form satisfied both subsections (b) and (g).

This anomaly would render subsection (g) meaningless.  Regardless of whether subsection (g) were satisfied, the availability of UIM coverage would turn on the sufficiency of the disclosure under subsection (b).  To give subsection (g) any meaning, we cannot accept the heirs' argument that the rejection must satisfy both subsection (b) and subsection (g).

## C.    Subsection (h)

If the policy were considered "existing," subsection (h) would apply.  Under this subsection, disclosure is necessary only if the policyholder carried at least some UIM coverage when the insurer sent the first two renewal notices after January 1, 2001.  *See* Utah Code Ann. § 31A-22-305.3(2)(h) (2007 supp.).  But UPS does not fall within this category because it validly rejected UIM coverage under subsection (g).  Thus, if the UPS policies had been "existing" as of January 1, 2001, no disclosures would have been required.

## D.    Summary

As a result, we conclude that the disclosure under subsection (g) was sufficient as a matter of law.  With that disclosure, UPS validly rejected UIM coverage.  Thus, the district court should not have granted judgment in any amount to the heirs.  Instead, the court should have granted summary judgment (in full) to Liberty Mutual.

15

## V.  Claim Against UPS

The heirs alternatively seek UIM coverage from UPS, theorizing that it is self-insured.  In Utah, companies that insure themselves can limit UIM coverage upon satisfaction of certain requirements.  *See id.* § 31A-22-305.3(c).  The heirs claim that UPS did not satisfy these requirements, creating a duty to pay UIM benefits as a "self-insurer."

On this claim, UPS sought summary judgment on two grounds:  (1) the remedy in the workers' compensation statute provided the exclusive remedy to Mr. Christoffersen (and, indirectly, to his heirs); and (2) UPS is not considered a "self-insurer" under Utah law.  The district court agreed with UPS that the workers' compensation statute provided the sole remedy; as a result, the court did not expressly decide whether UPS was a "self-insurer" under Utah law.  We agree with the outcome, but rely on the issue that the district court declined to explicitly address.  In doing so, we conclude that UPS was not a "self-insurer" under Utah law.

The threshold issue is whether self-insured status involves a matter of law or fact.  Though UPS sought summary judgment on this ground, it agrees with the heirs that self-insurer status involves a factual issue.  But we are not bound by the parties' characterization because the underlying question—whether self-insurer status is a question of law or fact—is itself a question of law.  *See, e.g., Koch v. U.S. Dep't of Interior*, 47 F.3d 1015, 1018 (10th Cir. 1995) ("While this court will honor stipulations

16

regarding factual issues, '[i]t is well-settled that a court is not bound by stipulations of the parties as to questions of law.'") (quoting *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1477 n.1 (9th Cir. 1986)). We hold, as a matter of law, that self-insurer status constitutes a legal question because it turns on statutory interpretation. *See Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (statutory interpretation involves a matter of law). Accordingly, we disregard the parties' characterization of the issue as factual; instead, we hold as a matter of law that UPS is not considered a "self-insurer" under Utah law.

UPS cannot be considered both a self-insurer and an insured. Because the heirs cannot recover when UPS is considered an insured, they seek to recharacterize the company as its own insurer. This characterization cannot be squared with Utah's laws governing UIM coverage or self-insurers.

As noted above, UPS had an insurance policy with Liberty Mutual. One could regard UPS as a self-insured only by disregarding this reality.

The heirs rely on the fact that UPS's retention and policy limit were both $5 million. This feature meant that as long as UPS remained solvent, it would pay any claims by its employees. Policies with this feature are called "fronting policies." *See* 1 *New Appleman on Insurance Law Library Edition*, § 1.09[4] (Jeffrey E. Thomas ed.) (LexisNexis 2013). These policies are sometimes viewed as a form of "self-insurance" because the insured pays claims as long as it remains solvent. *See id.* The heirs latch

17

onto this characterization and regard UPS as a self-insurer because its policy was a classic "fronting policy." But this argument ignores the reality that under Utah law, Liberty Mutual remains an "insurer" and UPS does not fit the statutory definition of a "self-insurer."

As noted above, the nature of the policy required UPS to pay claims as long as it remained solvent. But Utah law defines "insurance," and that definition includes the UPS policy regardless of who paid the claims. Under Utah law, the term "insurance" means: (1) "an arrangement, contract, or plan for the transfer of a risk or risks from one or more persons to one or more other persons," or (2) "an arrangement, contract, or plan for the distribution of a risk or risks among a group of persons that includes the person seeking to distribute that person's risk." Utah Code Ann. § 31A-1-301(82)(a) (2007 supp.). This definition includes "contracts of guaranty or suretyship entered into by the guarantor or surety as a business and not as merely incidental to a business transaction." *Id.* § 31A-1-301(82)(b)(ii).

UPS's fronting policy with Liberty Mutual fits this definition: It is an arrangement for the distribution of a risk between Liberty Mutual and UPS, the entity seeking to distribute that risk. Though the policy could also be characterized as a suretyship contract, this characterization is consistent with the statutory definition of "insurance." *See id.* Therefore, UPS's policy qualifies as "insurance" under Utah law. *See Croft v. Old Rep. Ins. Co.*, 618 S.E.2d 909, 915 (S.C. 2005) (stating that a fronting

18

policy does not make the policyholder a self-insurer under the state UIM law because the legislature "has not defined such policies as a form of self-insurance").

A company cannot have insurance with another entity and be considered a self-insurer, for statuses as an "insured" and "self-insurer" are mutually exclusive. *See State Farm Mut. Auto. Ins. Co. v. Du Page Cnty.*, 955 N.E.2d 67, 75 (Ill. App. Ct. 2011) ("[S]elf-insurance does not involve an insurer and an insured, because they are one and the same."); *see also Am. Nurses Ass'n v. Passaic Gen. Hosp.*, 471 A.2d 66, 70 (N.J. Sup. Ct. App. Div. 1984) (stating that under "the weight of authority," "self-insurance and insurance are mutually exclusive concepts"), *rev'd in part on other grounds*, 484 A.2d 670 (N.J. 1984); *Universal Underwriters Ins. Co. v. Marriott Homes, Inc.*, 238 So. 2d 730, 732 (Ala. 1970) (stating that self-insurance "is actually the antithesis of insurance as that term is commonly used"). Because the Liberty Mutual policy is considered "insurance" under Utah law, UPS cannot be regarded as a "self-insurer."

The term "self-insurance" has a specific meaning under Utah law. The term refers to an arrangement in which a company provides for spreading its own risks through a systematic plan. Utah Code Ann. § 31A-1-301(148) (2007 supp.). For companies that self-insure vehicles, the contents of the plan must satisfy certain requirements. For example, owners and operators must maintain "security" on vehicles that are driven. Utah Code Ann. § 41-12a-301(2)(a) (2007 supp.). The security can consist of a "certificate" of self-funded coverage. *Id.* § 41-12a-103(9)(d) (2005). This certificate

19

requires registration with the State and satisfaction of statutory requirements involving the number of vehicles, financial strength, and the making of a deposit. *Id.* § 41-12a-407(1) (2005).

In the summary-judgment record, the heirs did not present evidence that UPS was registered as a self-insurer. As a result, we conclude that UPS's fronting policy with Liberty Mutual did not constitute self-insurance. *See White v. Ins. Co. of the State of Pa.*, 405 F.3d 455, 458 (6th Cir. 2005) (holding that a fronting policy did not qualify as self-insurance because the employer had not satisfied Ohio's statutory requirements for self-insurer status); *Croft v. Old Rep. Ins. Co.*, 618 S.E.2d 909, 917 (S.C. 2005) (holding that a fronting policy did not transform the company into a self-insurer, requiring an offer of UIM coverage, because the company did not file proof of financial responsibility as required under state law).

The heirs make three arguments to support their characterization of UPS as a self-insurer: (1) as a categorical matter, fronting policies are considered a form of self-insurance under Tenth Circuit precedent; (2) UPS's fronting policy does not qualify as insurance because it involved no real transfer of risk; and (3) UPS represented itself as a "self-insured" with the Securities and Exchange Commission. We reject each argument.

The heirs' first argument relies on *Air Liquide America Corp. v. Continental Casualty Co.*, 217 F.3d 1272 (10th Cir. 2000). There, we described a fronting policy as "a form of self-insurance, under which [the insured] is responsible for its own losses and

20

[the insurer] acts merely as a surety that [the insured] will be able to pay any judgment covered under the policy." *Id.* at 1274.

The statement is dictum. The issue in *Air Liquide* was not whether the fronting policy constituted self-insurance, but whether it qualified as "other insurance" under the terms of a second policy. Our passing reference to the fronting policy as "a form of self-insurance" had no bearing on that issue, for we were simply describing fronting policies as self-insurance in a colloquial sense. Indeed, self-insurance is often "a term of colloquial currency rather than of precise legal meaning." 43 Am. Jur. 2d *Insurance* § 18 (2013). Because the meaning of "self-insurance" varies from state to state, the question is not whether fronting policies are categorically considered self-insurance, but whether a particular fronting policy qualifies as self-insurance under the laws of a particular state. *Air Liquide* is not to the contrary.

The heirs' second argument is that UPS's fronting policy does not qualify as insurance because it involved no real transfer of risk. We disagree. UPS may have retained the bulk of its risk under the policy, but some risk was transferred to Liberty Mutual because it would have to pay a claim if UPS became insolvent. *See Croft v. Old Rep. Ins. Co.*, 618 S.E.2d 909, 915 (S.C. 2005).

Finally, the heirs argue that UPS identified itself as a "self-insurer" to the Securities and Exchange Commission. This argument does not advance the inquiry under Utah law. Regardless of whether UPS was a "self-insurer" for purposes of federal

21

reporting requirements, we must decide whether the arrangement fits the Utah legislature's definition of a "self-insurer." We conclude it does not. But, however we answer the question, it is hard to imagine how UPS's characterization to the SEC would bear on an issue of Utah law.

Rejecting each argument, we conclude that UPS is not a "self-insurer" under Utah law. And without status as a self-insurer, UPS cannot incur liability under Utah Code Ann. § 31A-22-305.3(c) (2007 supp.). Thus, we affirm the award of summary judgment to UPS.

## VI.    Conclusion

For the reasons stated above, we affirm the award of summary judgment to UPS. We also conclude that UPS validly rejected UIM coverage; therefore, there was no UIM coverage under the Liberty Mutual policy. Accordingly, we reverse the judgment for the heirs and remand with instructions to enter summary judgment for Liberty Mutual on the entire claim.